## Piper's Appeal.

1. A testatrix owned a tract of land in Springfield township, Montgomery county, on which was a mill, and adjoining which was a lot in Philadelphia, which had always been used with it. She also owned, by a different title, another tract in the same township, about a mile distant, which had never had any connection with the first. She devised "all that certain grist-mill in Springfield township, Montgomery county, and all the real estate in the county of Montgomery, and lot of land in Philadelphia now used, with the mill property * * * to my nephew, William. * * * And as to the balance or residue of my estate, I order and direct to be divided equally between my brother John and my nephew William share and share alike." *Held*, 1. That the other lot did not pass to William by the specific devise. 2. That it passed by the residuary clause to John and William.

January 20th 1873.   Before READ, C. J., AGNEW, WILLIAMS and MERCUR, JJ.   SHARSWOOD, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Montgomery county*, in the distribution of the proceeds of the sheriff's sale of the real estate of William W. Piper: No. 37, to January Term, 1872.

The question in this case was upon the construction of the will of Lydia Piper, deceased, under which it was claimed that William W. Piper had title to the land from which the fund distributed arose.

John Piper, in 1789, was the owner of a tract of 18 acres of land in Springfield township, Montgomery county, on which were a grist-mill and a saw-mill, and an adjoining lot of about one acre, in Philadelphia, separated only by the county line. These lots had been conveyed to him by one deed, and as one tract. This tract, composed of the two lots, by divers conveyances became vested in Lydia Piper, the testatrix, and had continued to be used as one until her death.

In 1846, the executors of Jacob Streeper conveyed to Henry A. Piper a lot of land at or near Flourtown, also in Springfield township, Montgomery county, containing about nine acres and a half, for part of the purchase-money of which Henry A. Piper gave to Streeper's executors a mortgage on this lot. It was conveyed in 1849 to Susanna Piper, a sister of Lydia, subject to the mortgage.

Susanna Piper died in 1863. By her will dated May 25th 1857, and proved December 31st 1866, she gave all her "estate and property, real, personal and mixed, * * * unto (her) sister, Lydia Piper, and to her heirs and assigns." Lydia Piper died in the latter part of the year 1866, leaving a will dated July 24th 1858, and proved December 31st 1866.

By this will she provided, amongst other things, as follows :—

"In case my sister, Susanna Piper, survive me, then my will is and I give, &c., all my estate, real, personal and mixed, * * * unto my sister Susanna Piper, and to her heirs and assigns for-

ever; but in case my sister Susanna does not survive me, then my will is, and I do order and direct as follows, concerning all my estate which I may have at my decease, whether obtained or acquired by me before or after the date hereof, by will, gift or otherwise."

She then gave a number of legacies of money and chattels, and proceeded :—

" I give and devise all that certain grist-mill situate in Springfield township, Montgomery county, and all the real estate in the county of Montgomery, and lot of land in Philadelphia, now used with the mill property, and all the premises and appurtenances thereto belonging, unto my nephew, William W. Piper, his heirs and assigns in fee simple. And as to the balance or residue of my estate, I order and direct to be divided equally between my brother John and my nephew William W. Piper, share and share alike."

The Flourtown lot had never been used with the mill property, and was in no way connected with it.

On the 3d of April 1868, a judgment was entered against William W. Piper in favor of Byron Woodward for $1591.

To April Term 1870, of the Court of Common Pleas of Montgomery county, a levari facias was issued on the mortgage of Streeper's executors, and the Flourtown property sold by the sheriff. The balance ($809.74) of the proceeds of sale, after deducting the Streeper mortgage and costs, was paid into court, and Charles H. Garber, Esq., was appointed auditor to make distribution.

Besides the Streeper mortgage and the Woodward judgment, there was a claim on the fund made by John G. Johnson, Esq., a mortgage-creditor of William W. Piper.

The auditor reported that the Flourtown land did not pass to William W. Piper, under the will of Lydia Piper, and therefore awarded $730.34, the remainder of the fund in court, after deducting costs, to John G. Piper, administrator d. b. n. c. t. a. of Lydia Piper, deceased.

John G. Johnson, Esq., filed exceptions to the auditor's report:

1. That the auditor erred in holding that the Flourtown land did not pass to William W. Piper by the will of Lydia Piper.

2. That he erred in awarding the fund in court to the administrator, &c., of Lydia Piper.

3. That he erred in not distributing the fund in court to the lien-creditors of William W. Piper, according to their priority.

4. That he erred in holding that William W. Piper had no title to the Flourtown land.

The court (Ross, P. J.) sustained the exceptions, being of opinion that the Flourtown land passed to William W. Piper by the will of Lydia Piper.

23 P. F. Smith—8

The report was therefore recommitted to the same auditor, who awarded the whole fund to the judgment of Byron Woodward, and the court confirmed the report.

John G. Piper, the administrator, appealed to the Supreme Court, and assigned the decree of confirmation for error.

*D. H. Mulvany* (with whom were *A. R. Warriner* and *H. Livezey*), for appellants.

*J. G. Johnson* (with whom was *J. R. Hunsicker*), for appellees.

The opinion of the court was delivered by May 17th 1873, by

WILLIAMS, J.—The question presented by this appeal is, whether the land sold by the sheriff on the levari facias in this case, the proceeds of which are in question, was devised to William W. Piper by the will of Lydia Piper? If it was, then his judgment-creditors are entitled, according to their priority of lien, to the residue of the proceeds of sale, after satisfying the mortgage upon which it was sold, and the decree of distribution must be affirmed.

At the time of her death Lydia Piper was seised of a tract of land, the larger portion of which, containing about eighteen acres, was situate in Springfield township, Montgomery county, on which there was a grist-mill; and the smaller, containing about one hundred and fifty perches, was situate in Philadelphia county, adjoining the larger, and separated from it only by the county line. Her title to the mill property was derived through intermediate deeds and devises from her father, John Piper, to whom it was conveyed on the 2d of January 1789. Through all changes of title these lots remained together, and the smaller was always used with the larger as part of the mill property. She was also the owner of a lot near Flourtown, Montgomery county, subject to a mortgage given by Henry A. Piper, the former owner, out of which the proceeds of the sheriff's sale in this case were realized. This lot was about a mile from the mill property, but was not a part of it, and was never used or occupied in connection with it in any way. It was devised to her by her sister, Susanna, who died in 1863, by her will dated May 25th 1857. Was this lot, then, devised to William W. Piper by the will of Lydia Piper? Her will was made July 24th 1858, and she died in December 1866. The clause of the will by which it is claimed to be devised is in these words: "I give and devise all that certain grist-mill situate in Springfield township, Montgomery county, and all the real estate in the county of Montgomery, and lot of land in Philadelphia, now used with the mill property, and all the premises and appurtenances thereunto belonging, unto my nephew, William W. Piper, his heirs and assigns, in fee simple." Now what was in the

mind of the testatrix when she made this devise, and what did she intend to give her nephew? Was it not the mill property situate, as we have seen, partly in Springfield township, Montgomery county, and partly in the county of Philadelphia? And does she not describe the subject of her gift precisely as she would if she intended to give the mill property, and no more? She naturally thinks of the mill first, and the place where it is situated, and she describes both: " I give and devise all that certain grist-mill situate in Springfield township, Montgomery county," and then she thinks of the land on which the mill is erected, and which has always been used in connection with it, and she describes the land: "and all the real estate in the county of Montgomery, and lot of land in Philadelphia now used with the mill property;" and to complete the description, showing that she intended to give the mill property in its entirety, she adds: "and all the premises and appurtenances thereunto belonging."

Can there be a doubt that the mill property, and the mill property alone, was in her mind as the subject of her gift, and that she describes it in the very order that it would naturally occur to her? She certainly intended to give the entire mill property with all its appurtenances to her nephew. Why should she break off the description of her gift in order to devise another property not connected with it, and then return to the subject of her gift and complete the description? If she had intended to give the lot near Flourtown, would the devise of it have been injected into the description of the gift of the mill property? Would it not have preceded or followed it? If she intended to give the Flourtown lot why does she say, "all *the* real estate in the county of Mongomery?" Why not, as would be more natural, all *my* real estate? And why does she say, "all the real estate in the county of Montgomery, *and* lot of land in Philadelphia, now used with the mill property?" The words "now used with the mill property," according to their grammatical construction, are as clearly descriptive of the real estate in the county of Montgomery, as they are of the lot of land in Philadelphia. They refer to their immediate antecedents, which are linked and bound together by the connective "and," and it is evident that they were intended to limit and qualify both. They constituted in fact but one property, and they are described as one property. The learned judge of the court below was clearly mistaken in saying that it does not appear that any of the Montgomery real estate was used with the mill property. On the contrary, it appears beyond all doubt—and the fact is confessed by the appellees—that there are eighteen acres of land in Montgomery county, on which the mill was located, and that the lot in Philadelphia, separated from it only by the county line, was always used with it, and through all changes of title had remained together. Reading the devise in the light of these admitted facts,

there can be no doubt that the only subject in the mind of the testatrix, when she made the gift, was the mill property as it then was and always had been, and that she intended to give it in its entirety to her nephew, and did not intend to include in the gift any real estate not connected with it.

But if the Flourtown lot did not pass by the devise in question, it does not follow that it was not disposed of by the will of the testatrix. It is clear that it was devised by the residuary clause, which immediately follows, in these words; " and as to the balance or residue of my estate, I order and direct to be divided equally between my brother John and my nephew William W. Piper, share and share alike." As there is no direction in the will to sell and convert the testatrix's real estate into money, there can be no doubt that the Flourtown lot passed to the residuary devisees as real estate, subject to the mortgage given by the former owner; and if so, the judgments against William W. Piper were liens on his undivided half of the lot, and entitled to a moiety of the proceeds of sale, after satisfying the mortgage on which it was sold; and the other moiety of the proceeds of sale belong to John Piper, the residuary devisee of the undivided half of the lot, if he has not parted with his title and there are no judgments against him which are liens on the fund. In no aspect of the case is the appellant, as administrator de bonis non, &c., of the testatrix, entitled to any portion of the fund for distribution. The title to the lot out of which it arose vested in the residuary devisees, immediately on the death of the testatrix, and in distributing the fund it must be treated as their estate.

The appeal must therefore be dismissed, and the record remitted to the court below, with a recommendation to open the decree of distribution, upon the application of John Piper, and distribute the fund in conformity with the rights of the parties.

Appeal dismissed at the costs of the appellant, and the record remitted to the court below, with a recommendation to open the decree of distribution as suggested in the opinion.